IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                    CR. No. 98-16 JP

YAZZIE KING, SR.,

        Defendant.

## MEMORANDUM OPINION AND ORDER

On September 24, 1998 a jury found Defendant Yazzie King guilty of Counts I and IV (which was later renumbered Count III, as explained in footnote 1, infra) of the Superceding Indictment.[1] On October 1, 1998 Defendant filed his "Motion for Judgment of Acquittal Pursuant to Rule 29(c) and Motion for New Trial" [Doc. No. 63]. For the reasons explained below, Defendant's motion should be denied.

## Motion for Judgment of Acquittal

In ruling on a motion for judgment of acquittal based on insufficiency of the evidence, I must view the evidence, both direct and circumstantial, together with reasonable inferences to be drawn therefrom, in the light most favorable to the Government, and, without weighing

---

[1] The Superceding Indictment had four counts. I dismissed Count II of the Superceding Indictment at the close of the Government's case-in-chief. Thereafter, Count III of the Superceding Indictment was renumbered "Count II" and Count IV of the Superceding Indictment was renumbered "Count III" for the purposes of the jury instructions and the verdict form. This Memorandum Opinion and Order will refer to the various counts charged against the Defendant using the same renumbering system that was used in the verdict form.

conflicting evidence or considering the credibility of witnesses, determine whether that evidence, if believed, would establish each element of the crime beyond a reasonable doubt. United States v. Evans, 42 F.3d 586, 589 (10th Cir. 1994); United States v. Migliaccio, 34 F.3d 1517, 1521 (10th Cir. 1994). If the Government has met that standard, I must defer to the jury's verdicts of guilty. This standard reflects a deep respect for the fact-finding mission of the jury. Evans, 42 F.3d at 589.

Defendant requests that I enter a judgment of acquittal and renews his motion under Federal Rule of Criminal Procedure 29.[2] Defendant argues that a judgment of acquittal is appropriate because the Government failed to present any evidence whatsoever to prove that the Defendant acted for the purpose of abusing or degrading Eugenia Quintana (Count I) and Trudy Jim (Count III) or to satisfy his own sexual desires as required by 18 U.S.C. § 2246(2)(c).[3] I disagree.

Bennie Silversmith, a Navajo medicine man, testified that while the "sucking way" ceremony is a valid healing ceremony, see Transcript at 56, he was not aware of any Navajo ceremony that involved touching a woman's genitals or inserting a ceremonial object into a woman's vagina. Transcript at 83-84, 87. Mr. Silversmith also testified that in Navajo traditional

---

[2]Defendant properly moved for judgment of acquittal at the close of the Government's case and at all other appropriate times during the course of his trial.

[3]18 U.S.C. § 2246(2)(c) provides:

[T]he term "sexual act" means–
...
(C) the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person...

2

teaching, it is taboo to view a woman's private parts. Transcript at 87-88. Daniel Johnson, an ordained roadman in the Native American Church, testified that it is inappropriate for a roadman to view a woman's naked body or to insert a ceremonial object into her genitals during a ceremony. Transcript at 97, 105. Larry Etsitty, a member of the Native American Church, provided similar testimony. Transcript at 132, 135, 147-48. Furthermore, Mr. Silversmith, Mr. Johnson, and Mr. Etsitty all testified that it is improper for a traditional healer to order his patient's family members to leave during the ceremony. Transcript at 42-43, 99, 136.

Trudy Jim testified that the Defendant ordered her family to leave the hogan before performing the ceremony on her. Transcript at 405. She also testified that during the course of the ceremony, the Defendant removed or told her to remove all of her clothing (Transcript at 408), told her that she needed to "come" for the ceremony to work (Transcript at 407), touched her breasts (Transcript at 408), put his mouth on her genitals (Transcript at 409), and exposed himself to her (Transcript at 409). Ms. Jim also testified that at the conclusion of the ceremony, Defendant told her, "Remember what happened here is between you and me, nobody else." Transcript at 410. From this evidence, the jury could reasonably conclude that the Defendant acted in order to gratify his own sexual desires or to abuse or degrade Ms. Quintana and Ms. Jim as required by 18 U.S.C. § 2246(2)(c).

Defendant also argues that based upon the testimony presented at trial, his motion to dismiss or to suppress evidence [Doc. No. 25] should be granted at this time. In a Memorandum Opinion and Order entered September 14, 1998, I denied Defendant's motion to dismiss or to suppress on the ground that the First Amendment does not prevent the application of valid and neutral laws of general applicability such as those at issue in this case. I also denied the motion

3

because at a pretrial evidentiary hearing[4] Defendant failed to prove by a preponderance of the evidence that his actions stemmed from a genuine religious belief as opposed to a philosophy or a way of life. Such a failure of proof precluded a finding that Defendant's prosecution was invalidated by the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb et seq.

In support of his argument in favor of judgment of acquittal, Defendant argues only with my ruling under RFRA. Defendant contends that ruling was refuted by the evidence admitted at trial, including the testimony of the Government's own witnesses. Specifically, Defendant contends that the testimony at trial revealed that Defendant performed the "sucking way" ceremony, a recognized ceremony among traditional Navajos, on Ms. Quintana and Ms. Jim. Consequently, Defendant argues that the evidence supports his assertion that he was merely exercising his sincerely held religious beliefs, which are substantially burdened by the statutes under which he was prosecuted. See United States v. Meyers, 95 F.3d 1475, 1482 (10th Cir. 1996), cert. denied, 118 S.Ct. 583 (1997) (citing Thiry v. Carlson, 78 F.3d 1491, 1494 (10th Cir.), cert. denied, 117 S.Ct. 78, (1996)).

At trial the evidence on this issue was conflicting. The government presented the testimony of three adult women, Ms. Quintana, Ms. Jim, and Juanelle Begay, who went to the Defendant for healing and felt that they had been violated by the ceremony Defendant performed on them. The Government also presented the testimony of several expert witnesses who stated that in their experience it would be inappropriate for a Navajo medicine man or a roadman of the Native American Church to perform the sucking way ceremony through a woman's vagina. On

---

[4]The hearing began on June 22, 1998, was continued, and concluded on September 2, 1998.

the other hand, the Defendant and his wife, Lucinda King, testified about how Defendant was trained by another medicine man and how he treats women who have suffered from miscarriages or from other health problems. The Defendant also presented the testimony of Pearl Sutherland and Joyce Hardy, Defendant's former patients, who testified that Defendant had cured them by placing the ceremonial flute inside their vaginas to remove bad objects.

In order to succeed on his claim under RFRA, the Defendant must prove by a preponderance of the evidence that his actions were part of a sincerely held religious belief as opposed to a philosophy or way of life. Myers, 95 F.3d at 1482. While the Defendant did present some evidence that his use of the "sucking way" ceremony on women's vaginas is part of a sincerely held religious belief, I find this evidence to be outweighed by the evidence presented by the Government at trial. Consequently, Defendant's motion for judgment of acquittal should be denied.

## Motion for New Trial

Federal Rule of Criminal Procedure 33 provides that "[t]he court on motion of a defendant may grant a new trial to that defendant if required in the interest of justice." If after weighing the evidence and the credibility of the witnesses, the court determines that "the verdict is contrary to the weight of the evidence such that a miscarriage of justice may have occurred," it may grant the defendant's motion. United States v. Evans, 42 F.3d 586, 593 (10th Cir.1994) (quotation omitted). A motion for a new trial requires an examination of the prejudicial impact of an error or errors when viewed in the context of an entire case. United States v. Gabaldon, 91 F.3d 91, 94 (10th Cir. 1996). The decision whether to grant a new trial rests within the trial court's discretion. United States v. Patterson, 41 F.3d 577, 579 (10th Cir. 1994). However, "[a] motion

5

for a new trial is not regarded with favor and should only be granted with great caution." United States v. Sinclair, 109 F.3d 1527, 1531 (10th Cir. 1997).

Defendant reasserts the arguments he set forth in his motion for judgment of acquittal in support of his motion for new trial. In addition, Defendant contends that during her cross examination of the Defendant, counsel for the United States asked him an improper question[5] relating to Count II of the Superceding Indictment, which I had dismissed at the close of the Government's case-in-chief in accordance with Rule 29(a). Counsel for the Defendant objected to the question before the Defendant answered it and I instructed counsel for the Government to stay away from the subject. Shortly thereafter, a recess was taken and the jury left the courtroom. Transcript at 685. After the recess, counsel for the Defendant requested that the question be stricken and that the jury be instructed to disregard the question. Transcript at 685. When the jurors returned to the courtroom, I gave them the following instruction:

---

[5] The relevant exchange was as follows:

Ms. Bliss: Mr. King, did you tell Ms. Begay to remove her child's clothing?
Mr. Finzel: Objection, your honor.
The Court: Let me ask counsel to come up to the bench, please.
    (At the bench.)
The Court: Why did you ask that question?
Ms. Bliss: Why? Because I want to know if he did.
The Court: I have already ruled that that count is dismissed. I don't want you to go into this, you're going to prejudice this defendant and I'm going to have to declare a mistrial after all of this agonizing for eight days now.
Ms. Bliss: I don't see it as a prejudice but I will stop.
The Court: Stay away completely from that subject, that count has been dismissed.

Transcript at 683-84.

> You may recall that at the beginning of the trial I instructed you that the statements, the arguments, the comments of the lawyers are not evidence in the case. In the event any of you happen to remember the last question that was asked before the recess, it is not evidence and you are simply to disregard the question.

Transcript at 687. Defendant argues that "such admonition was insufficient to cure the irreparable harm and prejudice" caused by the Government's question.

As explained above, there was sufficient evidence for the jury to convict the Defendant on Counts I and III. In addition, the question asked by counsel for the United States and to which Defendant's counsel objected did not result in a miscarriage of justice. The Defendant did not answer the question, and the jury was instructed immediately that it should disregard the question. In addition, the Court's written instructions, given after all of the evidence had been presented, again told the jury that the lawyers' statements were not evidence. Court's Instruction No. 14. Viewed in the context of the entire case, the prejudicial impact of the question was minor and cannot serve as the basis for a new trial under Rule 33.

IT IS THEREFORE ORDERED that Defendant's "Motion for Judgment of Acquittal Pursuant to Rule 29(c) and Motion for New Trial" [Doc. No. 63] is DENIED.

_____
**UNITED STATES DISTRICT JUDGE**